IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ATLANTIC HOLDINGS, LTD., | : |
| | : |
| Plaintiff, | : CIVIL ACTION |
| | : |
| v. | : |
| | : |
| APOLLO METALS, LTD., et al., | : NO. 16-6247 |
| | : |
| Defendants. | : |

**M E M O R A N D U M**

**STENGEL, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　**July 11, 2017**

**I.　　INTRODUCTION**

　　This is a dispute between two companies over which company is liable for the other's polluted groundwater.

　　The parties have been litigating this case for several years, which began in the Court of Common Pleas of Lehigh County in 2014. On June 15, 2016, the parties entered into a "Tolling Agreement." Under this contract, among other thing, the parties agreed to discontinue the state court action. They also agreed that any statute of limitations-type defenses would be tolled until November 30, 2016. On November 30, 2016, the plaintiff recommenced the action—this time here in federal court.

　　The defendant filed counterclaims for breach of contract, fraudulent inducement, and rescission of the Tolling Agreement. The plaintiff filed a motion to dismiss the counterclaims. I will grant the motion to dismiss.

## II. BACKGROUND

In 1990, the defendant, Apollo Metals, Ltd., ("Apollo") purchased a piece of land in Bethlehem, Pennsylvania. Seven years later, the plaintiff, Atlantic Holdings Limited ("Atlantic"), purchased a nearby piece of land in Bethlehem to use for commercial storage space. Atlantic's land sits immediately adjacent to and downhill from Apollo's land. Since Apollo bought its land in 1990, it has used that land to operate an industrial steel plant.

Atlantic alleges that Apollo's operations have resulted in the release of hexavalent chromium and TCE in its groundwater.[1] Atlantic brings claims against Apollo under state and federal law for this pollution and contamination. Years before this litigation began, Apollo entered into a Covenant with the Pennsylvania Department of Environmental Protection ("DEP"). This Covenant acknowledged the presence of hexavalent chromium and TCE in the groundwater under Apollo's property. Atlantic claims these chemicals have since made their way onto its property and contaminated the groundwater there.

In October of 2014, Atlantic, through its prior counsel (who no longer represents Atlantic),[2] initiated a lawsuit against Apollo in the Court of Common Pleas of Lehigh County. On February 9, 2016, Atlantic's prior counsel was disqualified from the action. After that happened, Apollo hired a new lawyer and entered into a "Tolling Agreement" with Atlantic on June 15, 2016.

---

[1] Hexavalent chromium and TCE are considered hazardous substances, hazardous waste, industrial waste, and pollutants.

[2] As discussed in greater detail *infra*, this fact becomes relevant to Apollo's counterclaims and Atlantic's motion to dismiss those counterclaims.

This agreement tolled any statute of limitations-type defense that had not otherwise expired by September 30, 2014. (Doc. No. 13-1, Tolling Agreement ¶ 2). It also provided that Atlantic would withdraw its state court action on or before June 22, 2016. Atlantic did this. The Tolling Agreement also states: "The parties share a common interest in the resolution of the Civil Action." (Tolling Agreement ¶ C). This sentence forms the basis for the counterclaims that Apollo has lodged against Atlantic.

Atlantic filed suit in this Court on the same day the Tolling Agreement expired: November 30, 2016. In response to this complaint, Apollo filed an Answer and three counterclaims for: (1) rescission of the Tolling Agreement, (2) fraudulent inducement, and (3) breach of contract. In sum, Apollo claims that Atlantic fraudulently induced it to enter into the Tolling Agreement and breached that agreement by never engaging in any good-faith efforts to settle the case.

After Atlantic's counsel was disqualified, Atlantic retained David A. Garrison, Esq. It was under Mr. Garrison's representation that Apollo and Atlantic entered into the Tolling Agreement. This Tolling Agreement was jointly entered into and signed by authorized representatives of both Atlantic and Apollo. Apollo alleges Atlantic never had any intention of engaging in settlement discussions when they entered into the Tolling Agreement.

Two months after entering into the Tolling Agreement, Mr. Garrison and counsel for Apollo emailed back and forth about setting up a time to discuss settlement. Around September 2016, Apollo learned that Mr. Garrison no longer represented Atlantic. Atlantic had terminated Mr. Garrison as counsel.

Atlantic then hired new lawyers: counsel in this case. Counsel for Apollo contacted Atlantic's new counsel on September 23, 2016. During this conversation, Atlantic's counsel stated he was just becoming familiar with the case as he had recently been retained by Atlantic. In early November 2016, Atlantic's counsel communicated to Apollo that Atlantic was "not opposed to entertaining a settlement offer by Apollo." He also suggested scheduling a settlement conference. Apollo claims this suggestion for a settlement conference was a "sham." Apollo never followed through with it or made any settlement offer. Now Apollo claims Atlantic breached its duty to engage in good-faith settlement discussions per the Tolling Agreement. Atlantic filed a motion to dismiss Apollo's counterclaims.

## III. LEGAL STANDARD

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.

Subsequently, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

4

supported by mere conclusory statements, do not suffice." Id. at 678. Thus, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555).

The basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ. A. 08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

5

Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## IV. DISCUSSION

Atlantic moves to dismiss Apollo's counterclaims for breach of contract, fraudulent inducement, and rescission. I will dismiss Apollo's breach of contract claim because it fails to state a claim. Apollo's fraud claim must also be dismissed because it is barred by the gist of the action doctrine. Without any basis for relief in contract or tort, Apollo's rescission claim fails as a matter of law.

### A. *Breach of Contract*

Apollo fails to state a claim for breach of contract under Pennsylvania law.

To state a claim for breach of contract under Pennsylvania law, the plaintiff—or, in this case, the counterclaimant—must prove: (1) the existence of a contract, including its essential terms; (2) a breach; and (3) resultant damages. Kaymark v. Bank of Am., 783 F.3d 168, 182 (3d Cir. 2015) (citing Omicron Sys., Inc. v. Weiner, 860 A.2d 554, 564 (Pa. Super. Ct. 2004)).[3] There is no dispute a contract exists: the Tolling Agreement. However, Apollo is unable to allege that Atlantic breached the Tolling Agreement in any way.

Contrary to Apollo's arguments, the Tolling Agreement does not impose any duty, obligation, or performance on either party regarding settlement. Apollo attempts to go outside the four corners of the Tolling Agreement to imply this, but the plain language of

---

[3] The parties do not dispute that Pennsylvania law applies.

the agreement shows otherwise. All the Tolling Agreement states is that "[t]he parties share a common interest in the resolution" of the case. (Tolling Agreement ¶ C). The Tolling Agreement does not require either party to make a settlement demand, make a settlement offer, or even discuss settlement. Indeed, the Tolling Agreement does not require Atlantic or Apollo to take any action with respect to settlement. "A critical element of every claim for breach of contract requires a showing of a breach of some duty owed." Smithkline Beecham Corp. v. Continental Ins. Co., No. Civ. A. 04-2252, 2004 WL 1773713, at *1 (E.D. Pa. Aug. 4, 2004) (citing 23 WILLISTON ON CONTRACTS § 63:1 (4th ed.)). In other words, "when performance of a duty under a contract is due any non-performance is a breach." Id. (quoting RESTATEMENT (SECOND) OF CONTRACTS § 235 (1981)). Consequently, in order for there to be a breach of a contract, it must first be determined: was there any duty to be breached? With regard to Apollo's breach of contract claim, the answer to this question is clearly no.

The Tolling Agreement imposed no duty upon either party regarding settlement. The agreement simply stated that the parties had a mutual interest in resolving the action. This sentence alone carries no force in law as it does not impose any condition, duty, or performance. For this reason alone, Apollo's breach of contract claim fails as a matter of law.

To the extent the Tolling Agreement implied that the parties should engage in settlement discussions, that implication was not placed solely on Atlantic's shoulders. The Tolling Agreement speaks in terms of a "common interest" to both parties. (Tolling Agreement ¶ C). More importantly, Apollo's own submissions show that Atlantic did in

7

fact attempt to engage in settlement discussions with Atlantic. See Doc. No. 13-6 at 2, Nov. 11, 2016 Email from Atlantic's Counsel to Apollo's Counsel (expressly stating that Atlantic is "not opposed to entertaining a settlement offer by Apollo" and "[i]f you'd like to have a settlement meeting, my client is not opposed to that. We could meet at my office in Harrisburg, and each party would have present someone knowledgeable about the situation, and with the authority to enter into a settlement"). But this was to no avail. For whatever reason, Apollo chose not to follow-up with counsel for Atlantic regarding the above suggestion. Thus, it is peculiar that Apollo is now claiming *Atlantic* breached some alleged "duty" to attempt to settle the case.

All told, the Tolling Agreement clearly does not impose any duty, obligation, or performance with respect to settlement. With no such contractual duty to enforce, Apollo is unable to state a claim for breach of contract.

### B. *Fraudulent Inducement*

Apollo's claim for fraudulent inducement must be dismissed because it is barred by the gist of the action doctrine.

Apollo alleges that Atlantic fraudulently induced it to enter into the Tolling Agreement because it had no real intention of engaging in settlement discussions as required by the Tolling Agreement. Whether fraudulent inducement claims are barred by the gist of the action doctrine has been a matter of debate within this Circuit and among Pennsylvania courts. The Pennsylvania Supreme Court has not expressly decided this issue.

The gist of the action doctrine "operates to preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims." Hart v. Arnold, 884 A.2d 316, 339 (Pa. Super. Ct. 2005). In essence, the gist of the action inquiry asks: "What's this case really about?" Vives v. Rodriguez, 849 F. Supp. 2d 507, 520 (E.D. Pa. 2012). Interpreting Pennsylvania law, various district courts in this Circuit have found fraudulent inducement claims that are "predicated upon misrepresentations as to a party's intent to perform under a contract" barred by the gist of the action doctrine. Id. (collecting cases); see also Downs v. Andrews, 639 F. App'x 816, 820–21 (3d Cir. 2016) (dismissing fraudulent inducement claim, under Pennsylvania law, pursuant to the gist of the action doctrine because "the primary basis" of the fraudulent inducement claim rested upon duties allegedly memorialized in the terms of the contract); Wen v. Willis, 117 F. Supp. 3d 673, 681 (E.D. Pa. 2015) ("[W]here the precontractual statements that are the basis for the fraudulent inducement claim concern specific duties that the parties later outlined in the alleged contract," the claim may be dismissed under the gist of the action doctrine); Integrated Waste Solutions, Inc v. Goverdhanam, Civ. A. No. 10-2155, 2010 WL 4910176, at *11 (E.D. Pa. Nov. 30, 2010) (same).

As explained by the district court in Vives v. Rodriguez, "fraudulent inducement claims predicated upon misrepresentations as to a party's intent to perform under a contract" are "barred by the gist of the action doctrine" because "[t]here can be little doubt that a misrepresentation as to a party's intent to perform contractual duties 'concern[s] the performance of contractual duties.'" 849 F. Supp. 2d at 520–21 (second alteration in original).

9

Just as in Vives, we have here a fraudulent inducement claim predicated upon misrepresentations as to a party's intent to perform under a contract. Apollo alleges that Atlantic was obligated, per the Tolling Agreement, to engage in settlement discussions. See, e.g., Apollo's Countercl. ¶¶ 52, 60 (alleging that the entire "benefit of the bargain" of the Tolling Agreement was the ability to engage in settlement discussions). Apollo's fraudulent inducement claim is predicated upon this contractual obligation. Atlantic allegedly misrepresented its intent to engage in settlement discussions as required by the Tolling Agreement. Apollo points to no source other than the Tolling Agreement (*i.e.*, a contract) for its claim that Atlantic had a duty to discuss settlement.[4]

It is clear that this case is "really about," Vives, 849 F. Supp. 2d at 520, a contract: the Tolling Agreement. Apollo's fraudulent inducement claim necessarily depends upon the Tolling Agreement because, according to Apollo, the Tolling Agreement—and nothing else—required the parties to discuss settlement. According to Apollo, this alleged duty to discuss settlement was "later enshrined in the [Tolling Agreement]" at paragraph C. Vives, 849 F. Supp. 2d at 518. The claim thus amounts to a "representation[] as to [Atlantic]'s intent to perform" under a contract and is consequently barred by the gist of the action doctrine.

---

[4] As explained in dismissing the breach of contract claim, the Tolling Agreement did not actually require such performance. But that is not the point with respect to the gist of the action analysis. The point is that Apollo's claim is formulated on the basis of what Apollo alleges the contract required. By contrast, Apollo does not allege that settlement discussions were demanded by some larger social policies. Cf. eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002) ("The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus.").

### C. *Rescission*

Apollo alleges a claim for rescission that depends upon the success of its breach of contract and fraud claims. Because Apollo has failed to state a claim for either breach of contract or fraud, it has no right to rescission.

A party to a contract who has been defrauded may seek rescission of the contract as a remedy. Eigen v. Textron Lycoming Reciprocating Engine Div., 874 A.2d 1179, 1184 (Pa. Super. Ct. 2005); Wedgewood Diner, Inc. v. Good, 534 A.2d 537, 538 (Pa. Super. Ct. 1987). "Rescission is not a claim for relief or a cause of action, but rather it is an equitable remedy within a court's discretion." Therien v. Trustees of Univ. of Penn., No. Civ. A. 04-4786, 2006 WL 83448, at *3 (E.D. Pa. Jan. 10, 2006); Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc., 94 F. Supp. 2d 589, 595 (E.D. Pa. 1999). I have already concluded that Apollo's claims for relief (fraudulent inducement and breach of contract) fail as a matter of law. Accordingly, with no right to relief, Apollo cannot seek any remedy, including rescission.

Therefore, Apollo's claim for rescission is dismissed.

### V. CONCLUSION

For all the above reasons, Apollo's counterclaims are dismissed.